Nashville Warehouse and Elevator Corporation v. Commissioner.
Nashville Warehouse & Elevator Corp. v. Commissioner
Docket No. 109889.
United States Tax Court
1943 Tax Ct. Memo LEXIS 64; 2 T.C.M. (CCH) 975; T.C.M. (RIA) 43474; November 1, 1943
*64 F. A. Berry, Esq., and James W. Allen, C.P.A., 1018 Third Nat. Bank Bldg., Nashville, Tenn., for the petitioner. Frank M. Thompson, Jr., Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in the income tax of petitioner in the amount of $1,039.55 for the fiscal year ending June 30, 1940. The sole question is - Did he err in disallowing as a deduction $7,000 of $10,000 paid by petitioner to its president and sole stockholder as compensation for services? Findings of Fact Petitioner is a corporation with principal office in Nashville, Tennessee. Its income and excess-profits tax return for the taxable year was filed with the collector of internal revenue for the district of Tennessee. In this return petitioner claimed, as a deduction from its gross income, the sum of $10,000, paid to Joe W. Scales, its president, as compensation for services rendered during the taxable year. At the time of its organization under the laws of Tennessee in 1924 petitioner had four stockholders, one of whom was Joe W. Scales. In 1930 or 1931, Scales purchased the stock of the other stockholders, and since that time has been *65 its sole stockholder and president. The business of petitioner consisted of storing and handling grain. Prior to September 1939, it owned an elevator used for the storing of grain. It also leased other facilities. The fact that Nashville was not the center of a wheat producing section and did not have the advantage of railroad connections enjoyed by other cities made it difficult to obtain storage and to operate the grain elevator profitably. The principal duties of Scales, as president of the corporation, were to get business for the elevator, to supervise the operation of the plant, to hire and fire the necessary employees, to see that the grain was kept in proper condition, and to handle the granding and blending of the grain to enhance its value. Scales was well qualified to handle these duties, having been in the grain business since 1914 and in the elevator business since 1924. In 1937 Scales organized another corporation, Chas. D. Jones Company, for the purpose of buying and selling grain and furnishing storage to the warehouse. This corporation was organized to prevent the trading in grain from being involved in the financial statement of the warehouse itself. All of its *66 stock was also owned by Scales. In 1930 or 1931, while other stockholders had been interested in the company and Scales was its president, he had been voted a salary of $20,000 a year. This salary was determined by the respondent to be excessive but by compromise a deduction of $17,500 was allowed. Thereafter, to and including the fiscal year ending June 30, 1937, petitioner deducted $17,500 for compensation paid Scales and these deductions were not questioned by respondent. On June 30, 1938, petitioner had on hand cash of only $3,225.34. Scales was overdrawn with the petitioner on that date, and since he did not want the overdraft shown, he had it charged to him in the form of a salary to balance his account. The amount of the overdraft was $1,143.82 and that was the only amount claimed by petitioner as compensation paid to Scales in its return for the fiscal year ending June 30, 1938. The circumstances surrounding the charges for salary in the amount of $2,250 for the year ending June 30, 1939 were substantially the same. Scales contemplated that as soon as the business of the company justified he would reinstate his salary to what he felt would be a fair amount of compensation *67 for his services. On September 16, 1939 Scales made a sale of petitioner's elevator properties to the Continental Grain Company. The sale was made in order to get petitioner in a more liquid position. Prior thereto it had "too much facilities and not enough money." After the sale Scales secured elevator properties from other sources in order that petitioner might continue in the grain business. The Continental Grain Company stores grain primarily for itself and not for others. Prior to the sale of its storage space to Continental, petitioner had a storage capacity of approximately 1,000,000 bushels. After the sale it occupied only rented space sufficient for storing between 600,000 and 700,000 bushels. After the sale Scales felt that the petitioner was in a better condition and that he could draw a $10,000 salary without impairing its financial standing with potential customers. He accordingly caused the petitioner to pay him $10,000 as compensation for services rendered during the taxable year. The petitioner did not get much storage the first year of its operations in the rented property. In 1941, it had storage of between five and six hundred thousand bushels of grain. Part *68 of the services necessary to get that storage were rendered in the year 1940. The Chas. D. Jones Company stayed in business after the sale by petitioner of its elevator but it discontinued the services of Crockett Knox, who went to work for the Continental Grain Company. Scales took Knox's place and assumed the duties he formerly performed for that company. For the fiscal year ended June 30, 1938, petitioner reported gross income from the operation of its grain and storage business in the amount of $38,663.48. Income reported as interest on loans, notes, mortgages, bonds, bank deposits, etc., amounts to $2,658.75. Operating expenses, depreciation, etc., including the compensation charge for services of Scales, $1,143.82, were reported as $41,043.93, thus showing a loss from operations of $2,380.45. Offsetting the income from interest on loans, etc., $2,658.75, against the loss from operations, $2,380.45, a net income of $278.30 was shown. For the fiscal year ended June 30, 1939, petitioner returned $46,279.68 as gross income from the operation of its grain and storage business. Income reported as interest on loans, notes, mortgages, bonds, bank deposits, etc., amounted to $409.77, *69 and other income $42.06. Operating expenses, depreciation, etc., including the compensation charge for services of Scales, $2,250, and bad debts of $3,073.03, were reported at $44,548.59, thus showing a profit from operations of $1,731.09. Adding income from interest on loans, etc., $409.77, and other income, $42.06, to the profit on operations, $1,731.09, petitioner's net income as shown on its return was $2,182.92. For the fiscal year ended June 30, 1940, petitioner reported $24,302.13, as gross income from operating its grain and storage business. Income from interest on loans, notes, mortgages, bonds, bank deposits, etc., was returned as $5,730.46. Income from a bad debt recovery was shown as $443.40, and capital gain as $4,609.40. Operating expenses, depreciation, etc., including the compensation charge for services of Scales, $10,000, were reported as $34,338.20, thus showing a loss from operations of $10,036.07. Offsetting the reported income from interest on loans, etc., $5,730.46, the bad debt recovery, $443.40, and capital gain, $4,609.40, or a total of $10,783.26, against the loss from operations, $10,036.07, a net income of $747.19 was shown in its return. Respondent *70 determined that reasonable compensation for the services rendered by Scales during the taxable year was $3,000. He disallowed $7,000 of the deduction claimed. A reasonable allowance for compensation for services rendered to petitioner by Scales during the taxable year is $5,000. Opinion The question is one of fact and the finding which has been made is dispositive. It is always difficult to rationalize a fact question. The law, of course, is well-settled. "A reasonable allowance for salaries or other compensation for services actually rendered" should be made under the mandate of section 23 (a) (1), I.R.C. Since the Commissioner has determined that $3,000 is reasonable, for the services actually rendered by Scales, petitioner had the burden of showing that it is not. L. Schepp Co., 25 B.T.A. 419, 429. The payment in issue having been made to a sole stockholder the proof should also include a showing that it was true compensation for services and not "disguised distribution of profits." L. Schepp Co., supra. Briefly reviewing the evidence, petitioner, in the two years preceding the taxable year, claimed deductions *71 of only $1,143.82 and $2,250 for compensation paid to Scales. His explanation was that his other company - Chas. D. Jones Co., all of the stock of which he owned - and petitioner ran into big losses "on hedges in corn - * * * Farmers National Grain Corporation and Cargil Company were running a squeeze on corn, and we lost around $100,000 that year." How petitioner, which was engaged in the business of storing and handling grain, could sustain such a loss, is not clear, and none is shown on its income tax return for the fiscal year ending June 30, 1938. The loss was probably sustained by the Jones Co. which bought and sold grain. Petitioner's financial condition may have had something to do with the fact that no salary was voted to Scales during the two preceding years, since an examination of its balance sheets discloses cash on hand of only $3,225.34 on June 30, 1938, and $6,753.57 on June 30, 1939. Its balance sheet as of June 30, 1940, however, shows cash on hand of $5,030.89 after the payment to Scales of the $10,000 salary here involved. Despite the fact that petitioner sustained a loss from the operation of its business of handling and storing grain during the taxable year, *72 it was in a better position to pay Scales a salary than it had been in the two preceding years. This resulted primarily from two facts - (1) the receipt during the year of interest of $5,730.46, and (2) the receipt of a payment on the sale of its warehouse properties. Petitioner had sold these properties for $150,000, payment to be paid in fifteen installments of $10,000 each, the first payment being made on June 29, 1940. This being an installment sale, it reported one fifteenth of its profit of $71,594.78, or $4,772.98, in its return for the taxable year. It seems to be quite apparent from the evidence that Scales, in voting himself a salary of $10,000 for the taxable year, was influenced largely by petitioner's ability to pay. It does not necessarily follow, however, that the salary paid constituted reasonable compensation nor does this fact alone justify a finding that it was unreasonable. The nature and extent of the services performed, and any evidence relative to amounts paid by similar enterprises for life services must also be taken into consideration. At the hearing the President of the bank, which did business with Scales and his companies, testified that his bank had *73 many clients in the grain business; that he was familiar with their business and the salaries paid to their principal officers; and that in his opinion a salary of $10,000 per annum for Scales was quite reasonable. The probative value of this testimony is somewhat weakened, however, by the failure to show that the duties performed by Scales were similar or comparable to those performed by the officers referred to by the witness. The evidence introduced as to the nature and extent of the duties performed by Scales is far from satisfactory. We are convinced, however, that he performed a valuable service for petitioner when he made a sale of its warehouse properties at a substantial profit during the taxable year. We also know that during that year he took some steps to acquire rental properties to take the place of those sold so that petitioner might continue in the business of storing grain, and that he also solicited some storage. We do not know, however, how much time he devoted to the services rendered for petitioner. We are not impressed with petitioner's statement on brief that Scales' duties increased after the sale because he took over the duties theretofore performed by Knox, *74 who left the employ of the Jones Co. after the sale. According to the evidence the Jones Co. was organized to buy and sell grain, and while Knox was connected with that company he handled such purchases and sales. When Scales assumed those duties, petitioner did not thereby benefit, except possibly indirectly. It was not engaged in the purchase and sale of grain nor did it report any profit or loss from such transactions in its returns for the years ending June 30, 1938, 1939, and 1940. It is apparent that Scales divided his time between petitioner and the Jones Company during the taxable year; but how much time he devoted to the service of each is not disclosed. Petitioner urges as one of the reasons why the claimed deduction should be allowed that "for substantially the same services rendered in the fiscal year ending June 30, 1940, Scales drew a salary of $17,500.00 for the years between 1930 and 1938, and that this salary was acquiesced in by the Commissioner." We have no evidence upon which to base a conclusion that the services were substantially the same in the earlier years. The mere fact that respondent did question the reasonableness of the deductions claimed in some of *75 the earlier years does not necessarily prove that they were reasonable. But even if it be assumed, for the purposes of this case, that they were reasonable, in the absence of any proof that the services were substantially the same the assumption is of little assistance to petitioner. From what has been said it is apparent we are of the opinion $10,000 is not reasonable compensation for the services rendered by Scales during the taxable period. In our judgment, however, the amount allowed by the respondent is too low. We have concluded and now hold that $5,000 is a reasonable amount. It follows that the deficiency in tax must be recomputed. Decision will be entered under Rule 50.